UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARCO-DANE JACKSON, | |
| Plaintiff, | No. 22 CV 01726 |
| v. | Judge John Robert Blakey |
| DEREK PEON, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

*Pro se* Plaintiff Marco-Dane Jackson ("Jackson") brings various claims against Illinois State Police ("ISP") Trooper Matthew Szluka ("Officer Szluka"), ISP Sergeant Derek Peon ("Sgt. Peon"), and Hoffman Estates Police Officer Nicholas Boulahanis ("Officer Boulahanis") related to a 2021 traffic stop and arrest. Officer Boulahanis and the ISP Defendants separately move to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6), [28], [29]. For the reasons explained below, the Court grants both motions.

**I.  Background**[1]

Jackson alleges that, on May 13, 2021, Officer Szluka pulled him over for speeding. [9] at 7. Officer Szluka asked Jackson for his license, registration, and insurance. *Id.* Jackson handed Officer Szluka his license and registration but did not have insurance as Jackson "had just bought the vehicle." *Id.* Upon running a

---

[1] The Court draws these facts from Plaintiff's amended complaint, [9], and accepts them as true for purposes of deciding the instant motions.

1

background check, Officer Szluka learned that Jackson identified as a Gangster Disciple and had several convictions for "non-violent offenses" and an outstanding "non-arrest warrant" from Indiana. *Id.* Jackson also claimed "sovereign status." *Id.* at 8. Officer Szluka told Jackson that, in his experience, sovereign citizens tend to carry weapons, and he then asked to search Jackson's car. *Id.* Although he claims he was "compelled to consent," Jackson allowed Officer Szluka to search the glove compartment and under the seats for weapons, but explicitly limited the search to exclude the trunk. *Id.*

After finding cannabis residue "in a pouch" in the glove compartment, Szluka told Jackson he would now have to search the trunk. *Id.* at 8–9. Jackson responded that the marijuana "was recreational" and "no judge" would issue Officer Szluka a warrant for Jackson's trunk. *Id.* at 9. Officer Szluka replied that the residue gave him probable cause to search the trunk. *Id.* Jackson then requested Officer Szluka call a supervisor, which he did; Sgt. Peon soon arrived at the scene. *Id.* Sgt. Peon told Jackson that he "was not supposed to be driving with open marijuana," and Jackson denied driving with open marijuana. *Id.* at 9–10. Sgt. Peon then gave Officer Szluka a "head nod" to open and search Jackson's trunk. *Id.* at 10. Officer Szluka then searched Jackson's trunk, producing two objects "that were kind of colorful" but allegedly "unknown" to Jackson. *Id.* Jackson then ran from the scene, "out of fear" for his life. *Id.*

"Several hours later," Officer Boulahanis found Jackson and said, "freeze, you're under arrest." *Id.* Jackson alleges that Officer Boulahanis "didn't even know"

Jackson, and they "never had an encounter before." *Id.* Jackson alleges Officer Boulahanis "didn't even attempt to approach" Jackson to "inquire" before placing him under arrest. *Id.* Instead, Boulahanis arrested Jackson and took him to the Hoffman Estates Police Station. *Id.* Jackson alleges that several officers "unknown" to him then began beating him badly. *Id.* at 10–11. Jackson refused to give his fingerprints or have his mugshot taken, and he alleges that, as a result, these officers "pulled out" several of his dreadlocks to take a mugshot, and nearly "broke" his hands trying to pry his fist open to take fingerprints. *Id.* at 11. Jackson alleges that the encounter harmed him "physically and mentally." *Id.*

Jackson, proceeding *pro se*, initiated this lawsuit on April 4, 2022, *see* [1], and then filed an amended complaint on May 4, 2022, [9]. His amended complaint filed under 42 U.S.C. § 1983, alleges constitutional violations in both the search of his vehicle and his arrest. *Id.* at 1, 7–11. Jackson seeks $10,000,000 in damages. *Id.* at 12.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged

misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

In analyzing the motions to dismiss, the Court construes the complaint in the light most favorable to Plaintiff, accepts all well-pled allegations as true, and draws all reasonable inferences in Plaintiff's favor. *See Iqbal*, 556 U.S. at 678; *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 584 (7th Cir. 2021). The Court also reads Plaintiff's *pro se* complaint liberally, holding it to "less stringent standards than formal pleadings drafted by lawyers." *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015).

### III. Discussion

Plaintiff's amended complaint, construed liberally, alleges claims under § 1983 for unreasonable search, excessive force, and false arrest, the former directed at the ISP Defendants, and the latter directed at Officer Boulahanis.

Before turning to the merits of the claims, this Court, as a preliminary matter, must address Plaintiff's "Affidavits of Fact," [52], [54], filed in response to the motions to dismiss. To the extent Plaintiff filed these "affidavits" in an attempt to revise his factual allegations in the face of Defendants' arguments, they are improper. In deciding a motion to dismiss, the Court may not consider materials outside the complaint. *See Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) ("As a general rule, on a Rule 12(b)(6) motion, the court may consider only the plaintiff's complaint."). More importantly, Plaintiff may not amend his complaint by way of briefs or affidavit. *Agnew v. Nat'l Collegiate Athletics Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012). Accordingly, the Court declines to consider Plaintiff's revised facts,

4

though it will consider any legal arguments Plaintiff makes in his "affidavits," [52], [54].

Plaintiff challenges the lawfulness of his vehicle search, bringing claims for relief under 42 U.S.C. § 1983, [9], and seeking damages against ISP Defendants Szluka and Peon. [52]. Plaintiff acknowledges that he "was speeding," and that "it was entirely appropriate for Defendant Szluka to stop Plaintiff." *Id.* at 5. Plaintiff argues, however, that "on the facts alleged," the "search of Plaintiff's vehicle was not supported by probable cause." *Id.* at 6.

### A. Plaintiff's Unreasonable Search Claim

The Fourth Amendment protects the right of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In the absence of a warrant, a search is "reasonable only if it falls within a specific exception to the warrant requirement." *Riley v. California*, 573 U.S. 373, 382 (2014). The Court addresses each portion of the vehicle search in turn.

### 1. The Search of the Passenger Compartment

Because a person may "voluntarily waive his Fourth Amendment rights, no warrant is required where the defendant consents to a search." *United States v. James*, 571 F.3d 707, 713 (7th Cir. 2009). In such instances, police officers may "conduct a warrantless search if verbal consent is given." *United States v. Dean*, 550 F.3d 626, 630 (7th Cir. 2008). Plaintiff concedes that he "consented to the search" of the interior of the car, including the glove compartment and the area under the seats. *Id.* Plaintiff initially declined to consent to a search of the trunk, and Officer Szluka

complied with Plaintiff's limitation, until he found Plaintiff's "pouch" of cannabis in the glove compartment. *Id.*; *see also* [52] at 8. Accordingly, Plaintiff freely and voluntarily gave valid consent for the initial search of his vehicle, and it was during this consent search that Officer Szluka found Plaintiff's cannabis.

For these reasons, the Court dismisses any claim relating to the search of the passenger compartment with prejudice.[2]

### 2. The Search of the Trunk

Plaintiff next challenges Officer Szluka's search of the trunk, prompted by the discovery of Plaintiff's pouch of cannabis, arguing Officer Szluka had "no probable cause" to search his trunk. Not so. A police officer armed with probable cause may "conduct a warrantless search of every part of the vehicle and its contents, including all containers and packages, that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 799 (1982). Probable cause to search a vehicle exists when, based upon the totality of the circumstances, "there is a fair probability that

---

[2] Even if Officer Szluka exceeded the scope of Plaintiff's consent, Officer Szluka's search of the passenger compartment would still pass constitutional muster. An officer with a "reasonable suspicion that a motorist may be armed and may be able to gain immediate control of weapons may conduct a protective search of the passenger compartment of the vehicle without a warrant." *United States v. Shaffers*, No. 17-CR-438, 2018 WL 3141825, at *4 (N.D. Ill. June 26, 2018) (citing *Michigan v. Long*, 463 U.S. 1032, 1049 (1983)). Here, Officer Szluka knew Plaintiff violated traffic laws, identified as a Gangster Disciple and a "sovereign citizen," and had an outstanding felony arrest warrant. [9] at 7–9. Indeed, what Plaintiff alleges is a "non-arrest warrant," [9] at 7, is actually an arrest warrant for failure to appear in a 2016 prosecution for felony possession of a controlled substance. [30-2]. At the motion to dismiss stage, the Court may take judicial notice of matters of public record "not subject to reasonable dispute" and "capable of accurate and ready determination through sources whose accuracy cannot be questioned." *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012). These facts, combined with Officer Szluka's knowledge and experience—including his stated experience with sovereign citizens and weapons—give rise to a reasonable suspicion that Plaintiff may be armed, justifying a protective search of Plaintiff's passenger compartment incident to the stop for Plaintiff's admitted moving violation.

contraband or evidence of a crime will be found in a particular place." *United States v. Kizart*, 967 U.S. 693, 695 (7th Cir. 2020) (citations omitted).

The recreational consumption, possession, and sale of small amounts of cannabis has been legal in Illinois since January 1, 2020. 410 ILCS 705/10-5.[3] Despite this, there are still: "(1) illegal ways to transport it, (2) illegal places to consume it, and (3) illegal amounts of it to possess." *People v. Molina*, 208 N.E.3d 579, 588 (Ill. App. Ct. 2022). For example, it is illegal to possess cannabis in a vehicle unless the substance is in a "secured, sealed or resealable, odor-proof, child-resistant cannabis container that is inaccessible." 625 ILCS 5/11-502.15. Thus, police officers conducting traffic stops may still establish probable cause based upon cannabis alone. *See Molina*, 208 N.E.3d at 589 ("the smell of raw cannabis, without any corroborating factors, is sufficient to establish probable cause to search a person's vehicle."); *see also People v. Hall*, No. 4-22-0209, 2023 WL 379717, at *1 (Ill. App. Ct. Jan. 25, 2023) (holding that the odor of cannabis alone "constituted probable cause").

Here, Plaintiff possessed cannabis, stored in a "pouch" in his glove compartment. [9] at 8–9; [52] at 8. Sgt. Peon also contemporaneously informed Plaintiff that he could not "be driving with open marijuana." [9] at 9.[4] The ISP Defendants' first-hand observations of Plaintiff's violations of Illinois law provide probable cause for a warrantless search of Plaintiff's trunk.

---

[3] Plaintiff was stopped on or about May 13, 2021, after Illinois had legalized small amounts of cannabis for personal use.

[4] Plaintiff attempts in his affidavit to transform the "pouch" described in the Amended Complaint, [9], into "an odor-less, and child-resistant, sealed cannabis container, as required." *See* [52]. But, as noted above, such revisions remain improper, and the Court declines to credit these new allegations.

7

Indeed, viewing the totality of the circumstances, the allegations of the Amended Complaint fail to undermine the existence of probable cause: Officer Szluka observed Plaintiff driving in excess of the posted speed limit and without insurance, then learned through a quick license check that Plaintiff was affiliated with the Gangster Disciples and had an outstanding arrest warrant from a felony drug case; and Plaintiff disclosed his identification as a sovereign citizen, a group known, in Officer Szluka's experience, to potentially possess and carry weapons. [9] at 7–9. These facts, especially when taken together with the discovery of Plaintiff's pouch of cannabis, established probable cause for Officer Szluka to search Plaintiff's trunk.

Plaintiff's allegation that a trial court "found no probable cause", [9] at 10, does him no favors here. Plaintiff alleges no facts to provide context for such a finding, and this Court's decision today remains tethered to the facts alleged in the Amended Complaint. That Plaintiff was not eventually charged or cited for improperly packaged cannabis, [52] at 8, also bears no relation to officers establishing probable cause during the traffic stop. Plaintiff additionally asserts a vague due process claim against Officer Szluka for "not properly charging Plaintiff with cannabis under the statute and properly placing cannabis in evidence." [52] at 8. But any such claim remains unsupported in the Amended Complaint. Accordingly, the Court dismisses any claims arising from the search of Plaintiff's vehicle with prejudice.[5]

---

[5] The ISP Defendants also claim an entitlement to qualified immunity. But, in light of the findings above, we need not reach the issue at this point in the proceedings. *See, e.g., Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (finding that courts need not consider whether a right was clearly established if the facts alleged show no violation of that right).

### B. Plaintiff's Excessive Force and False Arrest Claims

Plaintiff's Amended Complaint, [9], and Responses, [52], [54], acknowledge at least three independent reasons for officers to arrest him before officers even searched his vehicle: (1) he was speeding, (2) he was driving without insurance, and (3) he had an outstanding warrant. Nonetheless, Plaintiff still seeks to move forward on his "wrongful arrest, false imprisonment, cruel and unusual punishment, as well as due process of law" claims against Officer Boulahanis. [54] at 2.

In moving to dismiss Plaintiff's claims, Defendant Boulahanis argues Plaintiff fails to plead any facts that would give rise to any cause of action against Officer Boulahanis. [28-1] at 1. The Court agrees. The only discernable factual allegations in the Amended Complaint are that Officer Boulahanis found Plaintiff after Plaintiff fled a traffic stop, told Plaintiff to freeze, and then arrested Plaintiff—all lawful in light of Plaintiff's own allegations. [9] at 10.

Plaintiff belatedly alleges in his Response that Officer Boulahanis was actually the ringleader who "led the other officers in on the attack of Plaintiff," and that Boulahanis himself was responsible for "grabbing Plaintiff by his hair." [54] at 5. The Plaintiff, however, alleges in the Amended Complaint that "several officers unknown" to him had beaten him, pulled his hair, taken his mugshot, and taken his fingerprints against his wishes. [9] at 10–11. Yet somehow these unknown officers became known in Plaintiff's Response, and Officer Boulahanis became a key participant in all of these alleged actions. [54] at 4–5. These facts are not just new

9

but are contradictory to Plaintiff's allegations in the Amended Complaint. As stated earlier, the Court will not consider such revisions, improperly alleged in affidavits.

Plaintiff's insistence that "other claims related to excessive force and false arrest" do implicate "all defendants," including the ISP defendants, "as Plaintiff was arrested for possession with intent to deliver a class X quantity of methamphetamine" does not help his case. [52] at 3. Plaintiff fails to supply any factual allegations in the Amended Complaint to suggest that Officer Szluka and Sgt. Peon were responsible for Plaintiff's post-arrest treatment. Accordingly, the Court dismisses Plaintiff's excessive force and false arrest claims, whether asserted against the ISP Defendants or against Officer Boulahanis.

## IV. Conclusion

For the reasons discussed above, the Court grants Defendants' motions, [28], [29]. The Court dismisses Plaintiff's claims against ISP Defendants arising from the vehicle search with prejudice; and dismisses Plaintiff's excessive force and false arrest claims without prejudice. In Plaintiff's Response [54], Plaintiff appears to preview a desire to amend his allegations as to his arrest and excessive force claims. If Plaintiff believes that he can amend his allegations to plead viable false arrest and excessive force claims, then this Court gives him one final opportunity to do so within 30 days of this order. The Court cautions Plaintiff that he must have a good faith factual and legal basis to assert any amended claims, and he could subject himself to sanctions and/or be held responsible for Defendants' legal fees if he does not.

Dated: September 22, 2023                    Entered:

                                             _____
                                             John Robert Blakey
                                             United States District Judge